[Civ. No. 2276.   Third Appellate District.—March 8, 1921.]

JESSIE D. SEALE, Appellant, v. J. H. BALSDON et al., as Trustees, etc., Respondents.

[1] TENANCY IN COMMON—CHARGE AGAINST COMMON ESTATE—PAYMENT BY COTENANT—CONTRIBUTION.—The liability of cotenants, as between themselves, for the payment of liens against the common estate is proportionate to their respective interests, and a cotenant relieving the common property from a lien or charge for the joint benefit of the tenants in common is entitled to an equitable lien by subrogation, and to contribution from his respective cotenants of their respective interests in the common property.

[2] STATUTORY CONSTRUCTION — RETROSPECTIVE EFFECT — LEGISLATIVE INTENT.—Laws will not be given a retrospective effect unless the intention of the legislature that such should be the case is clearly apparent from the context of the act.

[3] ID.—RECLAMATION DISTRICTS—REAPPORTIONMENT OF ASSESSMENT—USE OF WORDS "SHALL HAVE BEEN"—PROSPECTIVE OPERATION OF CODE SECTION.—The words "shall have been," used in section 3460 of the Political Code, as amended in 1915 and 1917, wherein it is provided that "When any tract of land upon which an assessment, or assessments, shall have been made shall be subdivided into smaller parcels, the board of trustees of the [reclamation] district shall reapportion the assessment," etc., relate to the future perfect tense, something that is to be done and perfected after the date of the enactment of the law in question, and by their use the legislature indicated its intention that such law should have a prospective operation.

[4] ID.—VALIDATION OF ASSESSMENTS—MEANING OF WORD "VALIDATED."—As used in section 3466 of the Political Code, wherein it is provided that "Assessments heretofore made in any reclamation district shall be validated and collected in the manner provided by law at the time such assessments were made," the word "validated" has a peculiar and forcible meaning, namely, to irrevocably fix upon the land as an entirety and as returned in the assessment list, and not upon the several parcels thereof, a lien for the amount of the assessment, or assessments, theretofore levied.

APPEAL from an order of the Superior Court of Colusa County in denying a petition for a writ of mandate. Ernest Weyand, Judge.   Affirmed.

The facts are stated in the opinion of the court.

John T. Carey and Arthur C. Huston for Appellant.

Devlin & Devlin and Thomas Rutledge for Respondents.

PLUMMER, P. J., *pro tem.*—The petitioner is now, and since the twenty-eighth day of December, 1916, has been, the owner of 439.74 acres of land situate within the exterior boundaries of Reclamation District No. 108.

In the month of August, 1913, an assessment known as and mentioned in the pleadings in this case as assessment number one was levied upon a larger tract of land, including the lands above referred to as belonging to the petitioner, then owned by the plaintiff and other persons as tenants in common.

In the month of August, 1914, another assessment, known as and called assessment number three, was levied upon the tract of land owned by the plaintiff and certain others as tenants in common. In this last assessment 663 acres was assessed as one parcel, and out of this 663 acres has been carved or partitioned the lands belonging to the petitioner by deeds of conveyance executed by the tenants in common owning the larger tract prior to the execution of said deeds in December, 1916.

Of assessment number one levied upon the lands belonging to tenants in common, of which the plaintiff was one, and including the land now belonging to the plaintiff, forty per cent has been paid by tenants in common, other than the petitioner herein.

Prior to the beginning of this action the petitioner calculated the amount of the assessments which she deemed to be her proper proportion of the assessments then delinquent and payable on account of assessments numbers one and three, and tendered the same to the treasurer of Colusa County. The tender of payment was refused.

On the fourth day of October, 1917, the petitioner, in writing, demanded of the respondents, as trustees of the defendant Reclamation District No. 108, that a reapportionment be made of the assessments herein referred to in such a manner as would charge the parcel of land then owned by petitioner, and also the parcels owned by her former cotenants in the larger tract, with a just proportion of the balance due of the said assessments numbers one and three,

so as to charge each parcel with its proportionate share of the assessments previously laid upon the larger tracts. The trustees of the Reclamation District declined to make this reapportionment, and were proceeding to enforce payment of the assessments as originally levied, by advertising the 663 acre tract of land for sale in the manner provided by section 3466 of the Political Code, when this petitioner instituted this action praying for a writ of mandate herein, and obtained an injunction restraining further proceedings by the trustees until the termination of this action.

In 1915 (Stats. 1915, p. 1286) and in 1917 (Stats. 1917, p. 1204) section 3460 of the Political Code was amended by adding thereto the following: ''When any tract of land upon which an assessment, or assessments, shall have been made shall be subdivided into smaller parcels, the board of trustees of the district shall reapportion the assessment, or assessments, upon such tract in such manner as will charge each of said smaller parcels with a just proportion of assessment, or assessments, previously made upon said tracts so subdivided. Said board of trustees shall file with the clerk of the board of supervisors of the county a list, or lists, of the charges assessed against each of said parcels. Said reapportionment shall be approved by the board of supervisors in the manner provided in section 3462 of this code. Said lists, after such approval, shall be filed with the county treasurer of the county, and shall have the same effect as an original assessment.''

The only difference between the two amendments lies in the designation of the persons, or body of persons, who should make the reapportionment and report to the board of supervisors.

The legislature in 1917 [Stats. 1917, p. 1196] also amended subdivision 17 of section 3454, specifying the duties of trustees of reclamation districts, and, among other things, authorizes them ''to reapportion the assessment, or assessments, upon any tract of land that has been subdivided into smaller parcels, in such manner as will charge each of said smaller parcels with a just proportion of assessment, or assessments, previously made upon said tracts so subdivided in the manner provided by section 3460 hereof.''

At the time these amendments were made section 3466 of the Political Code was also amended by adding thereto the

following provision: "Assessments heretofore made in any reclamation district shall be validated and collected in the manner provided by law at the time such assessments were made." (Stats. 1917, c. 671.)

The assessments involved in this action were both made a considerable period of time before the code amendments just referred to. All the proceedings specified to be taken by sections 3459 and 3465 of the Political Code had been taken as said sections existed at the time of levying, hearing of objections, and validating assessments, and proceedings were being further taken by the trustees to enforce payment as the law existed in relation to said assessments at the time of their levying, validating, and subsequent delinquency.

Do the amendments and additions to the section referred to, made by the legislature in 1915 and 1917, apply to the assessments levied in 1913 and 1914? If so, the writ of mandate should issue; if not, the petition should be denied.

[1] In the first place, it may be conceded that the law is well settled that the liability of cotenants, as between themselves, for the payment of liens against the common estate is proportionate to their respective interests, and that a cotenant relieving the common property from a lien or charge for the joint benefit of the tenants in common is entitled to an equitable lien by subrogation, and to contribution from his respective cotenants of their respective interests in the common property. (38 Cyc. 46, and cases there cited.)

[2] In Endlich on the Interpretation of Statutes, section 272, first edition, it is set forth as a rule of construction that laws will not be given a retrospective effect unless the intention of the legislature that such should be the case is clearly apparent from the context of the act.

[3] As heretofore stated, the portion of section 3460 of the Political Code here involved, as amended in 1917, three and four years, respectively, after the levying of the assessments, reads as follows: "When any tract of land upon which an assessment, or assessments, shall have been made shall be subdivided into smaller parcels," etc. The words "shall have been," grammatically construed, relate to the future perfect tense, something which is to be done and

perfected after the date of the enactment of the law in question.

In *State ex rel. Alden* v. *City of Newark etc.*, 40 N. J. L. 92, the words "shall have been" and "shall be" were given interpretation, the court using this language: "It is claimed that the words 'shall have been,' in the proviso, relate to the past; that their effect is to heal all irregularities in notices named in the act, which have occurred prior to its passage, and that the statute is intended to be retrospective. It is, however, obvious that all the terms used in this act are prospective, and apply only to the future. This is so, without dispute, in that part of the section which precedes the proviso. In the latter part of the sentence, the only words that are alleged to have a retroactive signification are those already quoted—'shall have been.' These words, and the following words 'shall be,' will not, however, relate to acts that were past when the law was enacted. 'Shall have been' is the future perfect tense, which represents an event as completed in future time, and 'shall be' represents what will take place in future time. If the legislature had intended to make the law retroactive, it would have been easy to express it by the use of the words *has been* or *had been,* in the present or past perfect tense, or other equivalent words."

In *Dewart* v. *Purdy*, 29 Pa. 113, the supreme court, in dealing with this question, holds as follows:

"Nothing short of the most indubitable phraseology is to convince us that the legislature meant their enactment to have any other than a prospective operation; and when they fix a future day for it to take effect, they stamp its prospective character upon its face. Their language in the section before us is, 'that in all cases of partition of real estate on any court wherein a valuation *shall have been made* of the whole or parts thereof, the same shall be allotted to such one or more of the parties in interest, who shall, at the return of the rule to accept or refuse to take at the valuation, offer in writing the highest price therefor above the valuation returned,' . . .

"This phrase, 'shall have been made,' is an instance of the future perfect tense. It contemplates a valuation perfected, but perfected in future, and the future of this statute was all subsequent to the specified date."

To the same effect is the case of *People* v. *Board of Education,* 126 App. Div. 414, [110 N. Y. Supp. 769]. In this latter case the court held that the context of· the act indicated an intention on the part of the legislature to give it a retroactive effect and therefore controlled the interpretation which otherwise would have been given to words which indicated an act to be begun and completed in the future.

As heretofore noted, the amendment made to section 3466 of the Political Code specifies that assessments heretofore made in any reclamation district shall be validated and collected in the manner provided by law at the time such assessments were made.

In 1913 and 1914 the law provided for the making of one list against the tract of land involved herein; that this list should be prepared by the commissioners theretofore appointed by the board of supervisors; that when the list was completed it should be filed with the clerk of the board of supervisors, after which event the board of supervisors were to appoint a time when the board would meet for the purpose of hearing objections to the assessment; that after all the proceedings were taken and had as provided by section 3462 of the Political Code, that no objection to such assessment should be considered by the board of supervisors or allowed in any other action or proceeding, unless made in writing to the board of supervisors, etc., and that unless an action were begun within thirty days thereafter, no action or defense could be maintained attacking the legality of said assessment in any respect.

[4] As used in section 3466 the word "validated" has a peculiar and forcible meaning. It is to irrevocably fix upon the land a lien for the amount of the assessment, or, in this case, assessments, theretofore levied, and not upon the several parcels thereof, but upon the land as an entirety and as returned in the assessment lists.

In the case of *Smith* v. *Mayor etc.*, 113 Ga. 833, [39 S. E. 327–330], the word "validation" has been given the meaning above indicated in reference to an assessment. The language there used is as follows: "An admission, by the corporation seeking to make the issue, that the notice was regular, or that the requisite number of voters assented

to the issue, is good as far as it goes; but, to irrevocably bind the taxpayer—and that is what 'validation' means— chances of mistake of either law or fact must be eliminated, and without the ascertainment and finding that the particular facts necessary to render the issue of bonds legal under the constitutional requirement exist validation should be refused. When the facts appear in such a manner as to evoke a judgment that the requirements of the law have been met, validation follows, under the terms of the act, but general admissions in pleadings do not authorize a judgment of validation."

In the case at bar all the proceedings requisite to validation appear to have been taken and had. Hence we conclude that the lien held by the district for the amount of the assessments theretofore levied had, under the provisions of the section referred to, become irrevocably fixed.

The amendment last referred to also specifies that the assessments shall be collected in the *manner* provided by law at the time such assessments were made. As here used, the word *"manner"* has a definite meaning. It refers to the method of procedure. The manner of doing a thing has reference to the way of doing it—to the method of procedure. (See *Bankers Life Ins. Co. v. Robbins*, 59 Neb. 169, [80 N. W. 484–486]; 26 Cyc. 516.)

The manner of validating and collecting assessments levied prior to the amendments of 1915 and 1917 were to be had as the various sections of the code existed at the time of the levying of the assessments in question.

In 1913 and 1914 the board of trustees of Reclamation District No. 108 had nothing to do with fixing the amount of the assessment charges of any tract of land lying within the exterior boundaries of the district. The fixing of the charges was, in the first instance, to be made by commissioners appointed for that purpose. The commissioners reported to the board of supervisors, and the assessment so reported was validated as the law then stood. The method of procedure, as the section now stands, specifies that the board of trustees of the district shall, upon application therefor, where lands have been subdivided, apportion the assessment upon the different parcels in accordance with the benefits found by the board of trustees to inure to

the respective parcels of land from the work done or contemplated, constituting the basis of the assessment. This proceeding would set aside the procedure had in reference to the assessments in question in this action. It reopens and sets aside a lien which otherwise has become irrevocably fixed upon the lands and premises belonging to the cotenants at the time the assessments were made, and affords a second opportunity to contest the same.

Being remedial in character, it is urged that as no time is fixed for the taking effect of the various sections of the Political Code referred to herein, they are operative immediately, and that such proceedings may be invoked at any time. If this is true it is evident that an owner of a large tract of land lying within a reclamation district might, by the simple process of subdivision, not only indefinitely delay the collection of an assessment, but reopen any judgment, or judgments, that might have been entered by any court adjudging the validity of an assessment as provided by section 3462 of the Political Code, and also give an indefinite number of opportunities to go before the board of supervisors and raise objections to an assessment.

Admitting, without deciding, that such is the law as it now stands, no reason is furnished thereby for holding that the legislature, by the amendments referred to, intended to give the sections amended any retroactive effect; on the contrary, it furnishes a very strong reason why the court should hold that such was not the intention of the legislature, and that the legislature voiced its intention that only a prospective effect should be given to the matter herein discussed by the addition made to section 3466 as set forth in this opinion.

From what has been said the question whether partition or segregation of interests by cotenants constitutes subdivision within the meaning of section 3460 of the Political Code is apparently immaterial, and for that reason, though discussed in the briefs of counsel, is not further considered herein. The result would be the same if we were to admit in this case that partition or segregation of interests by the cotenants owning the land at the time of the assessments amounted to subdivision within the contemplation of the code.

The order of the trial court in denying appellant's petition for a writ of mandate will be, and the same is hereby, affirmed and the petition denied.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 5, 1921.

'All the Justices concurred.