[Civ. No. 1014.   Fourth Appellate District.—September 27, 1932.]

A. F. PHELPS, as Trustee in Bankruptcy, etc., Respondent, v. CECELIA DAVIES, Appellant.

F. L. Richardson for Appellant.

Shreve, Abbey & Shreve for Respondent.

BARNARD, P. J.—This is an action by a trustee in bankruptcy against the wife of the bankrupt, in which it is sought to quiet title to certain real property upon the theory that the property in question is the community property of the bankrupt and his wife. The wife defended upon the claim that the property in question is her separate property.

After finding that Stephen Davies and Cecelia Davies were married on November 23, 1912, and ever since have been and now are husband and wife, that they have lived upon the property in question continuously since November 7, 1919, and that Stephen Davies was adjudged a bankrupt on March 4, 1930, the court found:

"That the defendants Cecelia Davies and 'Stephen Davies, on or about the 7th day of November, 1919, purchased eighty-five (85) acres of land in the county of San Diego and state of California, a part of which land so purchased is described in plaintiff's complaint, and that the total purchase price was the sum of twenty thousand dollars ($20,000.00), and that the defendant Cecelia Davies paid cash upon said purchase price in the sum of five thousand dollars ($5,000.00) which sum was her own separate property, having been the proceeds of property in-

herited by her from her grandfather's estate prior to her marriage with said Stephen Davies, and that she and her husband Stephen Davies executed a mortgage upon said real estate in the sum of eight thousand dollars ($8,000.00) as part of the purchase price thereof, and assumed the payment of a mortgage upon said premises of seven thousand dollars ($7,000), and that the title to said real estate so purchased by said Cecelia Davies was taken in the name of Stephen Davies, her husband, and during all times mentioned herein was managed and controlled by Stephen Davies.

"That subsequent thereto said Cecelia Davies and Stephen Davies sold forty-three (43) acres of said land for the sum of twenty thousand dollars ($20,000.00) and used part of the proceeds of said sale for the purpose of paying off said mortgage given upon said real estate by herself and husband as part of the purchase price thereof, but that said Stephen Davies never invested any sum whatsoever in said real estate, and that the purchase price thereof, which was paid, was wholly paid out of the separate funds of said defendant Cecelia Davies."

The court then found that on January 3, 1929, Stephen Davies conveyed the property to Cecelia Davies; that on the same day Cecelia Davies filed a declaration of homestead upon the property; that on February 27, 1929, these two, with others, joined in a conveyance of the property to a title company for the purpose of correcting an error in the description thereof; that when the property was so conveyed to the title company the grantee was instructed to reconvey the same to Cecelia Davies; that subsequently the title company reconveyed the property to Stephen Davies without the knowledge or consent of Cecelia Davies; that on April 15, 1930, Stephen Davies executed and delivered to Cecelia Davies a quitclaim deed covering all his right, title and interest in the property; and that the property is now encumbered by a mortgage for $7,900, "which sum represents a part of the purchase price of said real estate". As conclusions of law, the court found that Cecelia Davies is the owner of an undivided separate interest in said real property to the amount of $5,000, subject to existing mortgages, and that, subject to said separate interest and subject to the mortgage of record, the plaintiff is the owner of

an interest in said property equal to the claims filed and allowed in the bankrupt estate, plus the ordinary cost of the proceeding, and that the plaintiff is entitled to have its title to that portion of the property quieted. A decree was entered in accordance with these conclusions, from which judgment the defendant has appealed.

In addition to the facts set forth in the findings, the uncontradicted evidence shows that at the time of his marriage to appellant and at the time this property was purchased, Stephen Davies had neither money nor property; that shortly after their marriage the appellant received over $13,000 in cash from her grandfather's estate; that shortly thereafter she bought a place in Los Angeles, paying for it with $8,000 of her inheritance; that in 1919 she bought the property here in question for $20,000, paying $5,000 in cash which came from her inheritance, assuming a mortgage upon the property in the sum of $7,000, and executing a mortgage upon the real property, in which her husband joined, securing the balance of $8,000; that about two years later she sold the Los Angeles property and put all of the proceeds into the property here in question; that in allowing the property to stand in her husband's name she had no intention of giving it to him; and that at all times she has claimed to be the owner of the property.

It is the contention of the appellant that the conclusions of law drawn by the court and the judgment entered are erroneous and that under the facts found judgment should have been entered in her favor. The respondent contends that the appellant acquired a separate interest in said property only to the extent of the $5,000 originally paid by her from her separate funds, and that all interest in the property above that specific sum became the community property of the parties. The only argument made by respondent is to the effect that, while money borrowed upon a wife's separate property and used as a part of the consideration for the purchase of other property is to be considered as her separate property, any mortgage assumed upon property being purchased, or placed therein by both husband and wife as a part of the purchase price, must be considered, as a matter of law, as money borrowed for the credit of the community, with a corresponding community interest in the property itself. In other words, it is con-

tended that mortgages given or assumed as a part of the purchase price of property represent a proportionate community interest in the property so purchased, unless such mortgages are also secured by other property theretofore separately owned by one of the spouses.

In determining whether property is the separate property of one of the spouses, the source of the funds used in purchasing the property and the intention of the parties at the time are both important considerations. The mere fact that existing mortgages are assumed or the fact that mortgages are given by husband and wife as a part of the purchase price is not, in itself, conclusive that the credit represented by these mortgages is the credit of the community. In *Oldershaw* v. *Matteson & Williamson*, 19 Cal. App. 179 [125 Pac. 263, 265], the court said:

"Neither the fact that the husband contributed all his time and skill in the conduct of the business nor that he joined his wife in the execution of notes given for money wherewith to make the purchase (assuming that he did), in the absence of any agreement to that effect, gave him any interest in the property."

In *Heney* v. *Pesoli*, 109 Cal. 53 [41 Pac. 819, 821], it was said: "Assuming, then, that the property was purchased by the plaintiff as and for her separate property, and that her husband paid no part of the purchase price, we do not find in the mere fact that her husband joined with her in a note and mortgage to secure a part of the purchase price, but paid nothing on account thereof, anything to rebut the deduction that it was and is the separate property of the plaintiff."

In that case the wife purchased the property, making a cash payment from her separate funds, assuming an existing mortgage and agreeing to pay the balance of the purchase price about a year later. Her husband joined her in executing a mortgage upon this and other property owned by her. In its opinion the court further said:

"In the present case, the extrinsic evidence tended to show the intent to purchase the property by plaintiff as her separate estate, which intent was acquiesced in by her husband. That being so, the money borrowed and secured by a mortgage upon her separate property became also her separate property, and when it went to pay the residue

of the purchase price of the land the whole estate vested in the plaintiff as her separate property.

"It is rational to conclude that money borrowed upon the separate real estate of one of the spouses will, in the absence of any showing to the contrary, be treated as the separate property of the party owning such real estate."

In *Murphy* v. *Clayton,* 113 Cal. 153 [45 Pac. 267, 268], a case where land was purchased by husband and wife jointly, each paying one-half of the purchase price, and title being taken in the husband alone, the court said: "The consideration for the land having, at the time of the purchase, been paid, half of it by appellant's intestate and half of it by the respondent, and the title taken by the former, a resulting trust arose in the land in favor of respondent for the undivided one-half thereof, that proportion being an aliquot part of the consideration."

In that case the court further said: "The reasoning of the court in *Breeze* v. *Brooks,* 71 Cal. 169 [9 Pac. 670, 11 Pac. 885], more nearly applies to this case than that of any other case I have found. The decree of the court below adjudged that a deed made by John Brooks to his brother and codefendant, Patrick Brooks, was fraudulent and void, and that Patrick took the legal title thereunder in trust for John and his successors in interest, and that he holds the same in trust for the plaintiffs, who were creditors of John and purchasers at a sheriff's sale of the land conveyed, under a judgment in their favor against John. The court said: 'From the findings, it plainly appears that John had nothing except a naked legal title. Patrick had paid all the money for the land, and John, therefore, held it in trust for him.' John 'never, so far as Patrick knew, asserted any title adverse to Patrick's; and Patrick's right to assert his claim thereto was not barred, and John only conveyed to Patrick that which belonged to him.

"'The findings negative the idea that the plaintiffs, in giving credit to John, relied on any statement of Patrick that John owned the land; nor is it there intimated that they examined the records of deeds . . . to find out what they disclosed in reference to John's title, or relied on them in any way to induce the credit which they extended to John. They seem to have relied on the facts that John

lived on the land, claimed it in his conversations with them as his, and that he was insolvent, and Patrick knew it. . . .

" 'Therefore, it does not appear that the deed from John to Patrick was made to hinder, delay or defraud creditors; it was simply made to reinvest Patrick with the legal title to his own land.' Held, that the purchaser at execution sale got no title, 'as a purchaser at such sale can get no title save that of the judgment debtor', and that the findings, therefore, did not justify the decree. (See the same case, upon a second appeal, reported in 97. Cal. 72 [22 L. R. A. 257, 31 Pac. 742].)

"There is nothing illegal or against public policy in the mere fact, that a party equitably entitled to real property permits the legal title to remain in another; resulting trusts are fully recognized by our law; and every one is presumed to know the law."

In the case before us, not only did the husband pay no part of the consideration for the land but he had nothing with which to have paid it, and no facts appear that would justify the inference or conclusion that his wife gave him or intended to give him any interest in the land, or that his credit was relied upon in any way in making the purchase. The entire capital which enabled the purchase to be made was furnished by the wife from her separate funds, and the facts that the deed was taken in his name, that he lived with her upon the property, and that he signed the mortgage covering a part of the purchase price, are not controlling. In *Dyment* v. *Nelson,* 166 Cal. 38 [134 Pac. 988, 989], in which a wife borrowed funds upon her own credit, although her husband signed the note, the court said: "Nor was the possession of the property by the husband and the registry of the yacht in his name sufficient to change its *status*. The fact that it was not community property being once established, the management of it by the husband raised no presumption except that he was holding it in trust for her."

While the court found that "the defendants Cecelia Davies and Stephen Davies" purchased the land here in controversy, it also found that "the title to said real estate *so purchased by said Cecelia Davies* was taken in the name of Stephen Davies". The other findings show exactly what was done and there is no evidence that Stephen Davies had

anything to do with the purchase of the land other than that the deed was taken in his name, that he lived with his wife upon the property and that he managed the place. Under such circumstances, we think it must be held that he took and held the title in trust for his wife. The character of property, whether separate or community, is determined by the situation existing at the time it was purchased. The findings and the uncontradicted evidence show that this property was purchased by the wife with her separate funds, that a large amount of money from her separate estate was later put into the property, and that the only payment made upon the encumbrance came from a sale of a portion of the property itself. As was said in a somewhat similar case where, however, the property was taken in the name of both husband and wife "The utmost that can here be claimed for Mr. Shaw in this regard, is that he held the dry legal title to an undivided one-half of the property, as trustee for his wife, who was the sole beneficial owner thereof and entitled to have the same conveyed to her." (*Shaw* v. *Bernal*, 163 Cal. 262 [124 Pac. 1012, 1015].)

We find nothing in the facts found or shown in the evidence that would have justified a judgment in favor of this husband had he brought an action against his wife for the purpose of establishing an interest in the property. The trustee of his bankrupt estate is in no better position, being vested by operation of law only with such title as the bankrupt had as of the date he was adjudged a bankrupt. (National Bankruptcy Act, sec. 110; U. S. C. A., title II.)

Whether or not the last deed given by Stephen Davies to his wife was void, Davies at no time, so far as appears from the evidence, had any more than the dry legal title to the property. This he held as trustee for his wife, who was at all times entitled to a conveyance thereof.

For the reasons given, the judgment is reversed.

Marks, J., and Jennings, J., concurred.