[Civ. No. 17383.   Second Dist., Div. Two.   Apr. 19, 1950.]

ESTHER W. KENNEY, Respondent, v. EARL BENTON KENNEY, Appellant.

Dee Holder for Appellant.

Denis Evarts Bowman and Henry O. Wackerbarth for Respondent.

MOORE, P. J.—Pursuant to its findings the court below divided equally between the parties all the community property, an undivided one-half interest to each of them. On this appeal from the judgment there are only two issues: (1) respondent having discharged a community debt due the estate of her deceased father in the sum of $6,000, the judgment awarded her a lien against the property which had been under mortgage to her father. Appellant contends that such part of the judgment is error. (2) The court found that appellant's interest in the oil drilling partnership and in the assets of same and also 125 shares of the capital stock of Union Drilling and Petroleum Company are community property. Appellant contends that this finding is not supported.

The parties were married June 4, 1923. In June, 1925, they purchased a home on Arnaz Street in Los Angeles, to finance which the parties borrowed $6,000 from Mrs. Kenney's father, Mr. Albert Weible. In 1938 they purchased a new home on Hudson Street and used the Arnaz property as a part of the purchase price. This transaction necessitated a transfer of Mr. Weible's lien to the Hudson Street home. But instead of the customary note and mortgage, they caused a grant deed to be executed conveying the latter property to Mr. Weible as security for his $6,000. Six years later Mr. Weible deceased, thereafter followed by his widow. Respondent herein qualified as administratrix with will annexed of the Weible estate.

After the estate had been distributed respondent herein on January 10, 1946, petitioned the probate court for instructions alleging that the Hudson Street property had stood in the name of her father although it belonged to appellant and

respondent and that the title was held by Mr. Weible as "security for a loan of $6000 to E. B. Kenney and in the nature of a mortgage." Appellant contends that the award of the lien to respondent was erroneous for the following reasons: (1) husband has the management and control of community property; (2) Kenney's promise to repay the $6,000 was oral and was therefore barred after two years; (3) no action can be brought upon a debt secured by mortgage except in a suit to foreclose it. Appellant is in error in making such contentions. ■ Respondent having paid the $6,000 from her separate funds to satisfy the equitable mortgage in favor of the estate of her father she was entitled to be subrogated to all the rights of decedent's estate. Being an heir of decedent and entitled to inherit an interest in his property she had the right to redeem it from the lien at any time after the date it became due and upon having paid the sum of the indebtedness she became subrogated to all the benefits of the lien. (Civ. Code, § 2902.) It is the rule that when a tenant in common redeems the common property from a mortgage foreclosure the redemption has the effect of terminating the sale and by subrogation to the lien of the mortgagee the tenant redeeming acquires an equitable lien upon the interests of his cotenants for their just proportion of the redemption money. (23 Cal.Jur., p. 926; *Seale* v. *Balsdon*, 51 Cal.App. 677, 680 [197 P. 971].) In every case of subrogation there must be a debt for which a party or parties other than the subrogees are primarily liable and which in some capacity as an interested party the subrogee discharged for the protection of his own rights. (50 Am.Jur., p. 688, § 10.) The right of subrogation extends to those who might suffer loss if the obligation is not discharged, and if he has any substantial interest which will be protected by the extinguishment of the debt upon payment thereof he may hold and enforce it in like manner as the original payee. (50 Am.Jur., p. 669, § 23.) Where a party has paid off a mortgage at the request of the mortgagor, without knowledge of a second lien on the same property, he is entitled to be subrogated to the rights of the original mortgagee and to have the original mortgage revived and foreclosed. (*Simon Newman Co.* v. *Fink,* 206 Cal. 143, 146 [273 P. 565].) In *Boggs* v. *Boggs,* 63 Cal.App.2d 576 [147 P.2d 116], the husband owned an apartment house at the time of his marriage to plaintiff. By his will he left plaintiff a life estate in that property. While the property was being administered, the wife paid monthly installments on a trust deed out of

estate funds. After distribution she paid the accrued installments from her own funds. She was awarded a lien upon the property as security for the sums already paid and for such additional sums as she might thereafter pay on account of the subsisting lien. Also, she was granted the right of foreclosure in the event the moneys she had advanced were not repaid within a reasonable time. She was not even a comaker of the note and trust deed but was only an accommodation surety for the benefit of her husband. Proceeds of the loan were used for the reconstruction of the apartment building. She had no substantial interest in the property. It was held proper for equity to subrogate her to the rights and remedies of the encumbrancer by giving her a lien on the land for the amount of the payments she had made.

Neither the findings, conclusions nor judgment specifies from what source appellant should obtain the funds with which to discharge the $6,000 lien. Inasmuch as the debt is one of the community, the judgment should make clear that the $6,000 is to be taken from community assets, but if paid out of the separate property of appellant, his obligation should be to pay one-half of the $6,000.

With reference to appellant's contention that a wife has no power to make contracts concerning the community property, it is to be observed that no woman possessing common sense and ordinary prudence should allow a debt secured by a lien against community property to become in default if she has funds with which to avoid such embarrassment. It is true that the husband has the management of community property but if he fails properly to manage it and subjects a community property to be jeopardized by not paying encumbrances against it his wife will be protected if she ventures to advance her separate funds in the discharge of such indebtedness.

With reference to the contention that no action can be brought upon a debt secured by a mortgage except by a suit to foreclose the mortgage, there is no such situation involved here. The community estate owed $6,000. This it was in honor bound to pay and the appellant should have paid it some years before respondent sought the directions of the court as to what should be done. She paid the debt with her own funds and thereby obviated the ''one form of action for the recovery of a debt secured by a mortgage upon real property.'' (Code Civ. Proc., § 726.)

APPELLANT'S SEPARATE OWNERSHIP OF THE CORPORATE SHARES

The court's finding that the assets of the drilling partnership as well. as the 125 shares of the capital stock of Union Drilling and Petroleum Company are community property is error. More than a month prior to the marriage of the parties appellant obtained his interest in the partnership which was organized about May 1, 1923. Mr. McCaslin, one of the partners, had an interest in the Invader Oil Company which had an oil lease, the lessee of which insisted that the latter company meet the drilling requirements. At that time appellant joined with McCaslin and three other parties for the purpose of organizing a drilling business. Appellant received one-eighth interest in the partnership and was to receive $200 a month as complete payment for his services as bookkeeper. On May 1, 1923, the partnership contracted to drill a well for the Invader Oil Company. Their compensation was to be 32½ per cent royalty in the leasehold.

Thereafter the partners incorporated the Union Drilling and Petroleum Company on May 24, 1923, and by virtue of the assignment of the partnership's contract appellant became owner of one-eighth of the 1,000 shares issued for the contract.

Respondent contends that the 125 shares in the Union Drilling and Petroleum Company are community property by reason of the fact that appellant had not invested anything of value in it prior to his marriage. What was invested prior to the marriage is not material to a determination of the question. If the title to it or right in it was his prior to June 4, 1923, the stock and all revenues derived therefrom continued to be his separate property. (Civ. Code, § 163; *Estate of Gold*, 170 Cal. 621 [151 P. 12]; *Pereira* v. *Pereira*, 156 Cal. 1, 7 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A.N.S. 880].)

▮ That appellant owned an interest in the drilling partnership from the date of its organization on May 1, 1923, is clearly established. They commenced drilling on May 15 and incorporated their business under the same name as the partnership and on May 19 having organized they procured a permit for the issuance of the stock on July 24. One hundred twenty-five shares were issued to appellant and by order of the commissioner placed in escrow. While appellant advanced no money to the Union Drilling Company, he did not encumber his corporate shares. Because they had no ascertainable value at the time of their issuance is not sufficient reason for transmutation into community property. Many a fortune is laid in the "shoe strings" of a bold adventurer which may for

years appear hopeless as a commercial enterprise. This has been especially true in the petroleum world. The corporate shares awarded appellant for his interest in the drilling partnership became of value subsequent to his marriage but not by virtue of his efforts. He was paid his salary for a period out of moneys advanced by McCaslin but the transformation of his stock into a security of value was due to the fortuitous event of the drill's penetrating oil-bearing sands.

Whether property held by a man during coverture is separate is determined by the time of its acquisition. If it was separate then, it continues to remain so with the exception of such increase thereof as may have been due to the contributions of the community by virtue of capital or industry. (*Palen* v. *Palen,* 28 Cal.App.2d 602, 604 [83 P.2d 36] ; *Pereira* v. *Pereira, supra*; *Estate of Pepper,* 158 Cal. 619, 622 [112 P. 62, 31 L.R.A.N.S. 1092] ; *Boyd* v. *Oser,* 23 Cal.2d 613, 621 [145 P.2d 312] ; *Phelps* v. *Davies,* 126 Cal.App. 419, 426 [14 P.2d 922].) In the instant controversy the community contributed nothing to the increment of the value of the corporate shares. Appellant gave no discount on his salary because of the fact that he was a shareholder. There is no merit in the argument that the shares were escrowed on July 24, 1923. The shares belonged to appellant by virtue of the exchange of his interest in the drilling partnership for them and of his having obtained that interest at the time of the partnership's organization and its acquisition of the contract on May 1, 1923. The exchange did not in the slightest tend to transmute the stock from separate to community property. (5 Cal.Jur., p. 294; *Estate of Boselly,* 178 Cal. 715, 718 [175 P. 4] ; *Pabst* v. *Shearer,* 172 Cal. 239, 243 [156 P. 466].)

Finally, appellant assigns as error the court's ruling which excluded evidence offered to trace the income earned by the corporate shares into property found to be community in character. Where adjudication of the rights of litigants depends upon a determination of whether the property involved is community, upon concluding its investigation the court will determine the extent to which the revenues of separate property have been used to improve or protect the community estate. ▮ Where amounts of money taken from the separate property can be definitely ascertained, there is not then such a commingling of funds as will require the court to impress all the property as community. (*Huber* v. *Huber,* 27 Cal.2d 784, 793 [167 P.2d 708].) Inasmuch as the cor-

porate shares are the separate property of appellant, it was incumbent upon the court to receive all competent evidence offered by appellant that tended to show the investment of his moneys in the community property and if such funds are definitely traced to make such provision in the judgment as will protect appellant from losses by reason of such expenditures.

It is therefore ordered and adjudged that the judgment is reversed with instructions to ascertain from the evidence (1) the amount of revenues received by appellant from his shares in the Union Drilling and Petroleum Company, (2) the amount thereof invested in the community property of the parties, and (3) whether in the light of such determination appellant should be required to contribute more to respondent for the care of the child than the sum designated in the judgment. If upon concluding that the amount awarded to appellant, if any, requires a modification of the order in respect of the amount awarded for the support of the child such an allowance will be enlarged to such extent as justice and equity may dictate. (See *Mergenthaler* v. *Mergenthaler,* 69 Cal.App. 2d 525, 528 [160 P.2d 121].) (4) The judgment will be corrected also to order that the defendant shall out of the community funds pay plaintiff the sum of $6,000 or out of his separate funds the sum of $3,000.

Wilson, J., concurred.

McCOMB, J.—I concur in the order as to points (1), (2) and (4) but dissent from point (3).

A petition for a rehearing was denied May 8, 1950.