[Civ. No. 24292.   First Dist., Div. Four.   Dec. 15, 1967.]

A. F. C., INCORPORATED, Plaintiff and Appellant, v. JAMES H. BROCKETT, Third Party Claimant and Appellant.

Dominic Bianco, William A. Stone and Mack, Bianco & Means for Plaintiff and Appellant.

Allan H. McFarland and Vizzard, Baker, Sullivan & McFarland for Third Party Claimant and Appellant.

DEVINE, P. J.—Appellant, in an action on a promissory note of R. W. Akers, caused attachment to be levied on a Bonanza airplane. The amount of $21,953.01 and interest and attorneys' fees are alleged to be due to appellant.[1] Respondent is a third party claimant. It was adjudged that Akers had an interest of but $1,863.85 in the airplane. The court found the airplane to be worth approximately $27,000.

1. *Subrogation.*

Following the attachment, a bank which had financed the purchase of the airplane by Akers and respondent to the extent of $19,965.66, made demand on appellant, the attaching creditor, for payment of this sum. The bank held a chattel mortgage on the airplane. Appellant paid the bank in full and received an assignment of the bank's note and mortgage. Immediately, appellant made demand on Akers and respondent for reimbursement, and at once respondent paid the amount in full to appellant. Appellant refused to give respondent an assignment of the bank's note and chattel mortgage. But the trial judge held that respondent was entitled to be subrogated to the bank's rights as mortgagee against

---

[1] Throughout this opinion plaintiff, A. F. C., Incorporated, is referred to as appellant, and third party claimant, James H. Brockett, as respondent, although there was not only an appeal but a cross-appeal. As appears later in the opinion, the cross-appeal is dismissed.

appellant. Appellant contends that a right to subrogation must first be established in a separate proceeding, a suit in equity.

In this state an equitable right may be enforced in a court of law. This principle applies to a proceeding in subrogation. (*Offer* v. *Superior Court,* 194 Cal. 114 [228 P. 11]; 4 Witkin, Summary of Cal. Law (1960) Equity, § 89, p. 2864.) Appellant cites several suits in equity in which subrogation was allowed (*Elbert, Ltd.* v. *Federated Income Properties,* 120 Cal.App.2d 194 [261 P.2d 743]; [partition]; *Kenney* v. *Kenney,* 97 Cal.App.2d 60 [217 P.2d 151] [divorce]; *Shaffer* v. *McCloskey,* 101 Cal. 576 [36 P. 196] [suit to revive mortgage]), and argues that a suit in equity is necessary to establish a right by way of subrogation. But the cases do not say anything to justify the proposition that a separate suit in equity is required. The statement in *Meyers* v. *Bank of America etc. Assn.,* 11 Cal.2d 92, at page 96 [77 P.2d 1084], that one asserting a right of subrogation "must first show a *right in equity* to be entitled to such subrogation," does not mean, as we construe the case, that he must file a preliminary suit and prosecute it to favorable judgment before putting forth his claim to subrogation. It means, rather, that it is a prerequisite for one who asserts a right to subrogation to demonstrate superior equity of his claim.

Appellant cites *Jack* v. *Wong Shee,* 33 Cal.App.2d 402 [92 P.2d 449], for the proposition that the right of subrogation is not one which a party may assert by his own action, but which must be asserted in a civil action. But this does not mean that it must be established in a suit in equity. In fact, the *Jack* case cites, at page 411, for the proposition itself, *Offer* v. *Superior Court, supra,* 194 Cal. 114, 117, which recognizes the availability of subrogation in actions at law.

Of course, principles of equity apply, even if the action be one in form legal rather than equitable. (*Meyers* v. *Bank of America etc. Assn., supra,* p. 95.) We have no doubt that subrogation may exist, under the rule stated in *Offer* v. *Superior Court,* to third party claim proceedings as well as to direct two party actions at law. Nor do we doubt the correctness of the trial court's holding that respondent, on receiving the demand of appellant to pay the bank's indebtedness, became subrogated to the bank's prior right against Akers' interest in the airplane, which had been assigned to A.F.C., Incorporated, and was entitled to invoke this interest against appellant's inferior third party claim. One

who has property subject to a lien for a due claim may redeem it before redemption is foreclosed, and he then becomes subrogated to the benefits of the lien. (Civ. Code, § 2903.) ▆ A tenant in common may redeem the common property from a mortgage and become entitled to an equitable lien on the interests of his cotenant for their just proportion of the redemption money. (*Kenney* v. *Kenney,* 97 Cal.App.2d 60, 62 [217 P.2d 151]. And see *Riley* v. *Turpin,* 47 Cal.2d 152, 156-157 [301 P.2d 834].)

Respondent complied with appellant's demand. He cleared title to the airplane as against the lien of the chattel mortgage. Thereafter, to the extent that respondent might fail to carry the burden as to his share of ownership of the airplane, appellant's claim would be effective.

Appellant makes the point, in its closing brief, that respondent was a primary debtor to the bank and hence is not entitled to assert subrogation to Akers' obligation to the bank. ▆ The liability of cotenants, as between themselves, for the payment of liens against the common estate, is proportionate to their respective interests, and a cotenant relieving the common property from a lien or charge for the joint benefit of the tenants in common is entitled to an equitable lien by subrogation. (*Seale* v. *Balsdon,* 51 Cal.App. 677 [197 P. 971]; *Kenney* v. *Kenney, supra,* 97 Cal.App.2d 60; 83 C.J.S., Subrogation, § 21, p. 621.) For purposes of subrogation the paying cotenant is not deemed primarily, but only secondarily, liable for his cotenant's proportion of the debt. (50 Am.Jur., Subrogation, § 67, p. 724; *Seale* v. *Balsdon, supra.*)

## 2. *The Evidence*

▆ A. Appellant contends that the evidence is insufficient to sustain the "finding"[2] that a payment of $5,379.06 made to the seller of the airplane (to Akers and Brockett) was made by Brockett from his own funds. Appellant contends that the funds originated from the sale of another airplane, a Cessna, which had been owned by Akers. But Brockett testified that the funds were obtained by his own personal note to a bank, and although a representative of the bank testified that Brockett had mentioned the Akers airplane as

---

[2]Strictly speaking, it is not a finding, because findings are not made in third party claim proceedings. On appeal, it is assumed from the judgment that every essential fact was proved and found. (*Lawler* v. *Solus,* 101 Cal.App.2d 816, 819 [226 P.2d 348].)

the primary source of repayment, at the time of taking the loan, he also said that the loan was primarily made on Brockett's signature and that Brockett was one of the bank's "more substantial borrowers and depositors." The Cessna was transferred by Akers to Brockett without payment, but Brockett testified he sold it and handed the proceeds to Akers' father to apply to the son's debt to the father. Although the father could not remember the exact amount, nor the date of repayment, these matters plainly were for the trial judge and not for us to weigh. Brockett testified that he had promised Akers that he would pay Akers' indebtedness to his father from the proceeds of the sale. Brockett further testified that he had a cancelled check to the father in the amount of $7,500, and promised to produce it. Whether demand for the check was followed up by counsel for appellant does not appear, but certainly he had the opportunity of insisting on production of the check.

■ B. Appellant contends that the court erred in not allowing evidence that (1) certain real estate transfers by Akers to Brockett were without consideration and in fraud of creditors, and (2) Akers was insolvent on June 23, 1965. Although proof of similar transactions to the one in question may be admissible in cases of alleged fraud (*Atkins Corp.* v. *Tourny*, 6 Cal.2d 206, 215 [57 P.2d 480]), there must be a logical connection between the collateral and the instant issues. The trial judge in the case before us held that the evidence of the real estate transactions was remote and immaterial. We agree with his ruling. Appellant was not attempting to set aside any transfer of real property, nor even of the Cessna airplane. His attachment of the Bonanza airplane could only reach the interest which Akers had in it at the time of the levy. (*Kinnison* v. *Guaranty Liquidating Corp.*, 18 Cal.2d 256, 259-260 [115 P.2d 450].) Thus, only if appellant could show that the proceeds from the sale of the Cessna were used as part payment for the Bonanza would appellant gain an advantage. The real estate transactions were remote from the point at issue and had little, if any, relevance to it.

As to the insolvency, the judge seems to have been willing to assume that Akers was in financial difficulties. He decided, well within the range of his discretion, that an inquiry into the financial affairs of Akers at a time more than two and a half months before the airplane transaction—an inquiry which threatened to become lengthy—would have little to

do with his decision as to what was done with the proceeds from the sale of the Cessna.

There is a cross-appeal by Brockett from a nonappealable preliminary order. The cross-appeal states that it is from the whole of the judgment, but the argument relates only to the order. The cross-appeal is dismissed. Respondent Brockett is awarded costs on appeal.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.