[No. G019901. Fourth Dist., Div. Three. July 28, 1999.]

In re the Marriage of JEANNE and FREDERICK W. KOESTER.
JEANNE KOESTER, Respondent, v.
FREDERICK W. KOESTER, Appellant.

**COUNSEL**

Brian G. Saylin for Appellant.

James C. Booth for Respondent.

**OPINION**

**SILLS, P. J.—**

### INTRODUCTION

Nineteen years ago, in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285], our Supreme Court ruled that a wife's contribution from a separate property trust fund to the down payment of a house bought during a marriage was forfeited to the marital community when she made the mistake of allowing title to be taken, as real estate agents typically

advise, in joint tenancy. Because the wife had no agreement that property traceable to separate property should remain separate, she lost out, at the time of divorce, on any reimbursement for her separate property contribution. (See *id.* at pp. 815-816.) The court reasoned that it was *unfair* to the *non*contributing spouse to allow reimbursement because "[t]he act of taking title in a joint and equal ownership form is inconsistent with an intention to preserve a separate property interest." (*Id.* at p. 815.) *Lucas*, in short, was a case in which the "title presumption" controlled the outcome.

As the high court would point out some 18 years later in *In re Marriage of Walrath* (1998) 17 Cal.4th 907 [72 Cal.Rptr.2d 856, 952 P.2d 1124], the result in *Lucas* did not sit well with the Legislature, which enacted a specific statute to undo its result. That statute—originally Civil Code section 4800.2, now Family Code section 2640—provides for dollar-for-dollar reimbursement, but *without interest*, to a spouse who contributes separate property to the "acquisition" of community property to the extent he or she "traces the contributions to a separate property source." (Fam. Code, § 2640, subds. (a) & (b).)[1]

With the enactment of the reimbursement statute, however, it becomes too easy to forget that the Legislature never intended to overturn the much older line of cases stemming from *Pereira v. Pereira* (1909) 156 Cal. 1 [103 P. 488]. Those cases focus on the problem of separating out the respective contributions of effort and return on capital from the value of a spouse-operated business.[2] In the present case, for example, one spouse started a single proprietorship business prior to marriage, but incorporated it during

[1]Section 2640 provides: "(a) 'Contributions to the acquisition of the property,' as used in this section, include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property. [¶] (b) In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division."

All statutory references in this opinion are to the Family Code except as otherwise indicated.

[2]The *Pereira* problem typically arises when one spouse owns a business before marriage and keeps working at it during the marriage. When the couple divorce, the family law court is faced with the task of differentiating any increase in the value of the business resulting from the "community effort" of the spouse during marriage from the return on his or her separate capital. But the problem can also be present when a spouse establishes a business during marriage with community capital and works at it during marriage, there is a period after separation during which the spouse uses his or her "separate efforts" to increase the value of the business, and for some reason the court must value the business at the date of trial.

the marriage. The trial court applied the reimbursement statute instead of a *Pereira* approach, reasoning that the community "acquired" the business by virtue of the incorporation, though no stock certificates were ever issued in which title somehow was transferred to the community. The spouse received reimbursement for the value of the business at the date of incorporation, but nothing by way of return on investment.

As we explain below, a community does not "acquire" a separate property business merely because it is incorporated during the marriage. Here, there was nothing to trigger the "title presumption" on which the *Lucas* decision turned and which the Legislature endeavored to correct by passing the reimbursement statute. The judgment must therefore be reversed.

## FACTS

Prior to his marriage to Jeanne in November 1986, Frederick W. Koester owned a sole proprietorship, Koester Electric. In October 1989 the business was incorporated. No stock was ever issued. At the conclusion of the trial of the dissolution of Jeanne and Frederick's marriage in April 1996, the judge ruled that the incorporation of the business made the business community property because the community "acquired" the incorporated business during the marriage. The judge said, "The court rejects a *Pereira* approach because in fact there was an acquisition. There was an acquisition in 1989 when they acquired this corporation."

The characterization of the business as community property made a big difference. The parties agreed the business was worth about $622,000. After the trial judge allowed Frederick a credit for about $337,500—the value of the business at the time of the marriage—so he was charged with about $284,000 in community assets when the business was awarded to him.[3] Had the property been characterized as separate, Frederick was prepared to show that his investment had appreciated from $337,500 to $558,000, based on a 10 percent return since the marriage. (Cf. *Pereira* v. *Pereira, supra,* 156 Cal. 1.) In that case Frederick would only have been charged with $64,000 in community property.[4]

---

[3]The judge used the $337,500 value of the business on the date of marriage because Frederick's counsel was unprepared to show the value of the business on the date of incorporation.

[4]We express no opinion as to whether the 10 percent rate of return was correct. That issue can be litigated on remand.

## DISCUSSION

### *The Facts Require Application of Pereira, Not the Reimbursement Statute*

■ There are two reasons the trial court should have applied the classic *Pereira* analysis (i.e., award the value of the separate property at the time of marriage plus a reasonable return to represent the appreciation of separate capital, with the balance going to the community) rather than a section 2640 reimbursement approach (i.e., reimburse the spouse for separate money contributed to what is now a community asset). The first is that section 2640 was never designed to apply to separate property businesses and is inherently not applicable to businesses, at least when there is no compliance with the rigorous requirements for transmutation set forth in section 852 (requiring transmutations be made by express written declaration). The second is that the mere incorporation of a business is not a change in its character.

### *Section 2640 Not Applicable*

It should be remembered that the original *Pereira* case involved a separate saloon and cigar business, which was "very profitable." (See *Pereira,* v. *Pereira supra,* 156 Cal. at pp. 6-7.) The trial court allocated *all* the "gains" from the business after marriage to the community, but the California Supreme Court reversed, reasoning that the "capital" of the business was "undoubtedly" the owner spouse's separate estate and, further, "some of the profits were justly due to the capital invested." (*Id.* at p. 7.) The high court said it was error to classify those "gains" as community property. (*Id.* at p. 8.)

By contrast with *Pereira*, what is now section 2640 arose out of the case of a *residence* which was purchased with separate property, but the title to the residence was taken in joint tenancy. Thus, as one might expect knowing the origins of the statute, published decisions involving the reimbursement statute typically arise out of conveyances or acquisitions of residences. (E.g., *In re Marriage of Walrath, supra,* 17 Cal.4th 907, 911 [husband's separate property house deeded to himself and wife as joint tenants]; *In re Marriage of Heikes* (1995) 10 Cal.4th 1211, 1214 [44 Cal.Rptr.2d 155, 899 P.2d 1349] [husband's separate property home and vacant lot conveyed to himself and wife as joint tenants]; *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 805 [53 Cal.Rptr.2d 179] [husband applied money from inheritance to pay off loan used to buy family home]; *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 283-284 [39 Cal.Rptr.2d 673] [husband's separate residence from previous marriage conveyed by quitclaim deed to himself and wife as joint tenants]; *In re Marriage of Tallman* (1994) 22 Cal.App.4th

1697, 1698 [28 Cal.Rptr.2d 323] [wife contributed separate funds to pay off debt on family home].)

In contrast with the way title is taken when a married couple own residential property, the incorporation of a sole proprietorship business is typically done for reasons extrinsic to the marital relationship. Except in the unusual case where a married couple might use the occasion of the incorporation of a separate business to expressly transmute that business into community property—and that would certainly entail much more than mere incorporation without the issuance of stock certificates (cf. *In re Marriage of Barneson* (1999) 69 Cal.App.4th 583, 590-591 [81 Cal.Rptr.2d 726])[5] —couples usually don't go around changing the way title is held in ongoing businesses to mark the occasion of a marriage.

### Mere Incorporation Is Not Acquisition

The reimbursement problem raised by the *Lucas* case and the Legislature's reaction to it can also easily obscure the basic principle that separate property does not change its character because of a change in *form or identity*. (E.g., *In re Marriage of Weaver* (1990) 224 Cal.App.3d 478, 484 [273 Cal.Rptr. 696].)

Here, there is nothing to indicate that the incorporation of the separate property business represented anything other than a mere change in the legal form under which the business was conducted. As the trial judge noted, Jeanne herself testified that the customers and accounts receivable were the same after the incorporation as before.

*Kenney* v. *Kenney* (1950) 97 Cal.App.2d 60 [217 P.2d 151] is on point. In *Kenney* a single man acquired an interest in an oil partnership about a month before marriage. The partnership was incorporated about two weeks before the marriage, but the one hundred twenty-five shares of stock he was to receive for interest was not issued until about seven weeks *after* the marriage. (See *id.* at p. 64.) The trial court held that the assets of the partnership and the 125 shares of stock were community property, a decision which the appellate court held to be error. (*Ibid.*)

Confronting the argument that the shares were escrowed (i.e., acquired) during the marriage, the *Kenney* court said: "The shares belonged to [the

---

[5]We divine no absolute rule that section 2640 could *never* apply where a separate business was incorporated. However, any such application could only arise when there was an unambiguous express written transmutation under section 852. As *Barneson* demonstrates, you don't just slip into a transmutation by accident. In *Barneson*, a request to "journal" stock from one spouse's account to another's was held *not* to constitute a transmutation because there was no *unambiguous* change of ownership indicated. (See *In re Marriage of Barneson, supra*, 69 Cal.App.4th at pp. 590-591.)

husband] by virtue of the exchange of his interest in the drilling partnership for them and of his having obtained that interest at the time of the partnership's organization and its acquisition of [a certain oil well drilling] contract on May 1, 1923 [i.e., before the marriage]. The exchange did not in the slightest tend to transmute the stock from separate to community property." (97 Cal.App.2d at p. 65.)

If the fact that the shares in a business interest acquired before marriage but not *issued* to a spouse until after marriage did not "transmute" them into community property in *Kenney*, the fact that a separate business was not incorporated until after marriage should not transmute it here. In either case one might say that *something* was "acquired" during the marriage, but only by ignoring the reality of what was really happening, i.e., that a separate property asset was merely changing its legal form. To say in either case that an asset was "acquired" by the community (in *Kenney*, the actual stock shares, here the business itself) because some aspect of corporate formation took place during the marriage is to elevate semantics over substance.

### There Was No Invited Error

Jeanne contends that Frederick's trial counsel[6] waived his client's right to receive a *Pereira* return by stipulating to the community character of the business. And, it is indeed true that the parties filed a stipulation which, in two places, describes the business not as a separate property business in which there may be a community interest but as a "community corp."[7]

The description in the stipulation was inaccurate, as we have shown. In retrospect it appears to have been sloppy drafting. Still, there are two

---

[6]Frederick's appellate counsel was not his trial counsel.

[7]Here is the actual text, transcribed as closely as we can from the handwritten original appearing in the record:

"ISSUES:

"..........................................

"4. TRANSFER OF SEPARATE BUS. OF HUSBAND CONTRIBUTED TO COMMUNITY CORP.

"a) IF TRACED—PARTIES STIPULATE AMOUNT TO BE 337,582 (SUBJECT TO ISSUE OF ADDITIONAL PEREIRA RETURN ON SEP. CONTRIBUTION)

"..........................................

"STIPULATE:

"1. CURRENT VALUE (3/31/94) OF KOESTER ELECTRIC IS $662,108

"a) SUBJECT TO UPDATE PER MORE CURRENT RECORDS TO BE PRODUCED AT TRIAL BY CORP.

"b) SUBJECT TO RESPONDENTS [FREDERICK'S] CLAIMED ADJUSTMENT TO MR. MILLS CALCULATION OF EXCESS EARNINGS.

"2. IF TRACED STIPULATE SEP CONTRIB OF HUSBAND TO CURRENT COMMUNITY CORP (KOESTER ELECTRIC, INC) IS 337,582, SUBJECT TO

"a) ISSUE OF ADDITIONAL PEREIRA RETURN

"b) WIFE'S CLAIM SHOULD NOT INCLUDE GOODWILL VALUE IN CONTRIBUTION."

reasons the issue was preserved for appeal: (1) Despite the description, the stipulation still managed to present *to the trial court judge* the reduced essence of the issue which Frederick has presented in this appeal, i.e., whether he could receive a fair rate of *return on* the $337,500 value of the separate business at the time of marriage; and (2) the trial judge understood precisely the nature of the legal issue before him (better, indeed, than Frederick's own trial counsel).

1

First, the stipulation provides that Frederick would receive credit for his "sep contrib" of the value of the business at the time of marriage *plus* have the opportunity to litigate the *issue* of a "Pereira return" (a phrase also used twice in the stipulation) on that contribution.[8] To preserve the issue of a "Pereira return" necessarily required *the trial judge* to determine the character of the business, rather than simply accept a stipulation that it was community.

While it is true that the stipulation uses the phrase "if traced" in connection to tracing Frederick's separate property contribution to the "community corp," it does not follow that Frederick's attorney was stipulating to the use of section 2640 *in lieu of* a *Pereira* return. If that really were the case, then there should have been no reference to any "Pereira return" at all, because by definition a "Pereira return" exists where a section 2640 zero interest reimbursement does not. The stipulation merely contemplates that Frederick would receive *at least* a $337,500 reimbursement plus have the chance to argue for a *Pereira* return. When looked at that way, the incorrect description of the business as "community" becomes academic: As long as Frederick was to receive a return on the $337,500, it really didn't make any difference whether the business was described as community or separate. He was going to get the business anyway, and if $337,500 plus a "Pereira return" was ascribed to his separate estate, calling it a "community corp" with a *Pereira* return was functionally the same as if the business were separate with a community interest determined by *Pereira*.

2

The second reason the issue was preserved for appeal despite the stipulation is even more basic: The trial judge was not misled. The trial judge saw

---

[8] The only other place in the record that Jeanne points to for her stipulation theory is Frederick's counsel's answer "yes" to the court's question during oral argument about the point, "Even without the stock, isn't it presumptively community?" While counsel gave what in our view was the wrong answer, it is clear from the rest of the oral argument that he was still contending that his client should receive a return on the $337,500 amount of separate capital.

*the issue* correctly. On the record the judge predicated his decision on the determination that incorporation of the business entailed its "acquisition" by the community as a matter of law. He didn't simply rubber stamp a stipulation.[9] There is no indication that the trial judge was misled or fooled by the description of the business in the stipulation.[10] Rather he acknowledged, on the record, that he had given Frederick "an appealable issue" by his refusal to apply *Pereira* and did so in language unmistakably clear that he was ruling as a matter of a disputed point of law concerning the effect of the incorporation rather than as a mere consequence of an improvidently worded stipulation.[11]

## DISPOSITION

### *Reversal of the Judgment*

The judgment must be reversed, as the application of *Pereira*, as distinct from the reimbursement statute affects the division of community property.[12] The remaining issues concern a forced sale of a certain Lexus automobile. The auto had been purchased by the corporation for $19,071, which was apparently a bargain because, at the time of trial, it had a fair market value of $24,400. The trial judge ordered Frederick, on "behalf of Koester Electric," to transfer the car to Jeanne for the bargain price of $19,071.

The portion of the judgment concerning the transfer of the Lexus must therefore also be reversed. The transfer order was premised on the idea that

---

[9]He said: "The court rejects a Pereira approach because in fact there was an acquisition."

[10]It is possible that Jeanne might have been, though. In her respondent's brief, Jeanne has conspicuously *not* argued that any of the paperwork associated with the incorporation would meet the requirements of a transmutation under section 852. She claims that the stipulation "obviat[ed]" the need for it. To be fair to Jeanne, our opinion should be read without prejudice to her, on remand, to try to show such a transmutation under the standard articulated in section 852 as interpreted in *Barneson*. As the nuances of any transmutation issue (based on evidence which may or may not exist) have not been briefed, we need comment no further.

[11]The judge said, "I've given you an appealable issue because I have directly refused to apply Pereira to this situation. I don't think Pereira does apply. I think it's an acquisition of a community asset when you create a corporation during the marriage, and I think the only thing you're entitled to is a 2640 reimbursement."

[12]Our disposition means we need not address Frederick's contention that he should have been allowed, in the trial that took place, to present evidence of the value of the business at the time of incorporation. However, since our opinion is without prejudice to Jeanne to try on remand to prove a section 852 transmutation based on any paperwork associated with the incorporation (though the record indicates there were no actual stock certificates) (see fn. 10, *ante*), it is always possible that the question could arise again if Jeanne were successful. However, whether or not evidence of the value of the business at the time of incorporation would even be relevant if a section 852 transmutation *were* proved (as distinct from an "acquisition" of community property with a section 2640 right to reimbursement) is an issue which has not been briefed and which may never crop up in any event, so we decline to address it now.

the business itself was community property, which it is not. The car is the property of a separate property corporation, not otherwise joined to the dissolution. Because the transfer order was incorrect, we need not deal with Frederick's contention that the transfer should have been for fair market value instead of the bargain price which the corporation got.

To summarize: The judgment as to the property division is reversed and the case remanded to the trial court to recalculate the division. Our decision is without prejudice as to the precise rate of "Pereira return" to apply. The judgment requiring transfer of the Lexus by the corporation to Jeanne is also reversed with directions that the judgment *not* require the transfer. Obviously if the corporation wants to sell the car to Jeanne for fair market value that is between the parties.

### No Sanctions

In light of the reversal, Jeanne's request for sanctions for a frivolous appeal is obviously untenable. For his part, Frederick has intimated that Jeanne should be sanctioned for a frivolous sanction request, though he doesn't quite have the temerity to formally request sanctions.

Let us merely say that we heartily disapprove of knee-jerk requests for sanctions brought by any litigant, and leave it at that. Life at the bar is already too filled with litigious horrors to add to them a self-feeding spiral of sanction requests based on allegedly frivolous appeals and, reciprocally, allegedly frivolous sanction requests. As our Supreme Court stressed in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650-651 [183 Cal.Rptr. 508, 646 P.2d 179], the power to punish attorneys for bringing frivolous appeals "should be used most sparingly to deter only the most egregious conduct." When an incorrect call made by the trial judge—one of the most respected in the state when it comes to family law—on an issue of almost first impression is combined with the peculiar problems presented by the stipulation, it should be fairly obvious that neither side should be calling the other's position frivolous.

Crosby, J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied August 10, 1999.