[No. D018475. Fourth Dist., Div. One. Mar. 3, 1994.]

In re the Marriage of EARL E. and GERYL SUE TALLMAN.
EARL E. TALLMAN, Appellant, v.
GERYL SUE TALLMAN, Respondent.

**COUNSEL**

John J. McCabe, Jr., for Appellant.

Wesley & Buck and Robert F. Wesley for Respondent.

**OPINION**

**TODD, Acting P. J.**—Earl Tallman appeals the judgment dissolving his marriage to Geryl Tallman. He asserts the trial court erred in determining the amount of the reimbursement to which she was entitled for spending her separate property funds to extinguish a debt encumbering the community residence Civ. Code,[1] (former § 4800.2, now Fam. Code, § 2640). We agree with Mr. Tallman's contention.

### FACTS

The parties married on May 29, 1980, and separated on February 6, 1990. On January 24, 1985, they purchased a home in Lakeside. They made a $10,125 down payment, $6,818 of which came from Mrs. Tallman's separate funds. Part of the balance owed was secured by two trust deeds in favor of the Scotts, one for $48,500 and the other for $4,500, for a total of $53,000; the remaining balance was secured by a trust deed in favor of Security Pacific Bank. On January 24, 1985, Mrs. Tallman paid the Scotts $40,000 of her separate property funds[2] and in exchange they forgave the $53,000 debt.

At trial on October 30, 1992, the court found the house's gross fair market value was $143,000, and as of the date of separation, the parties owed

---

[1] All statutory references are to the Civil Code unless otherwise specified.

[2] Apparently, she obtained the $40,000 from selling real estate in El Cajon she owned as her separate property.

$68,200, leaving a net fair market value of $74,800. It ruled Mrs. Tallman was entitled to a $59,818 reimbursement ($53,000 plus $6,818), which when subtracted from the $74,800 left $14,982, or $7,491 for each party. It gave her the option of purchasing Mr. Tallman's interest in the property within 90 days of counsel's determination of total offsets.

## DISCUSSION

Preliminarily, Mrs. Tallman urges us to dismiss this appeal. She argues Mr. Tallman failed to seek and obtain a statement of decision (Code Civ. Proc., § 632) and stipulated to the release of all exhibits, and we cannot determine the legal basis for the trial court's order from the remarks it made while rendering its decision.

We need not look to the trial court's reasoning, but only to the result reached. (*Troche* v. *Daley* (1990) 217 Cal.App.3d 403, 407-408 [266 Cal.Rptr. 34]; *Sequoia Pine Mills, Inc.* v. *Superior Court* (1968) 258 Cal.App.2d 65, 68-69 [65 Cal.Rptr. 353].) ■ Furthermore, while the record here is rather sparse and somewhat confusing, the parties agree that the court allowed Mrs. Tallman a $53,000 reimbursement under section 4800.2 for using $40,000 in separate property funds to extinguish $53,000 in encumbrances on the community residence. The record bears this out. Thus, it provides a sufficient basis from which to determine whether Mrs. Tallman was entitled to a reimbursement of only $40,000 rather than $53,000.

Section 4800.2 provided: "In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division. As used in this section, 'contributions to the acquisition of the property' include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property."

Here, Mrs. Tallman voluntarily contributed $40,000 of her separate funds to the acquisition of the community home. Fortuitously, she was able to use this amount to pay off liens with principal balances totaling $53,000. There is no evidence she expected a reimbursement greater than her contribution.

She could have evidenced such an expectation by placing a $13,000 lien on the property at the time she paid off the $53,000 debt. The community, not Mrs. Tallman, should benefit from the $13,000 saved. She is entitled to reimbursement for the amount of her contribution, not for the amount by which her contribution reduced the debt. This conclusion comports with the definition of "contributions to the acquisition of property" in the last sentence of section 4800.2, referring only to "payments" in the context of reducing the principal of a loan.

## DISPOSITION

The judgment is modified to reflect a section 4800.2 reimbursement to Mrs. Tallman of $46,818 ($40,000 plus the $6,818 separate property down payment) rather than $59,818 ($53,000 plus $6,818). As so modified the judgment is affirmed.

Benke, J., and Huffman, J., concurred.