[No. E025973. Fourth Dist., Div. Two. Mar. 15, 2001.]

In re the Marriage of LUCY and JACK D. COCHRAN.
LUCY COCHRAN, Respondent, v.
JACK D. COCHRAN, Appellant.

**COUNSEL**

R. E. Scott & Associates and R. E. Scott for Appellant.

James W. Wiley and Mary A. S. Swanson for Respondent.

**OPINION**

**GAUT, J.—**

### 1. *Introduction*

Jack D. Cochran (husband) appeals a marital dissolution judgment entered on August 24, 1999, wherein the trial court rejected his claim for reimbursement of separate property funds allegedly used for home improvements during his marriage.

Husband contends that under Family Code section 2640[1] he is entitled to reimbursement of funds paid from his separate property portion of his profit sharing plan. Those funds were deposited in a Chino Valley Bank account (Chino Bank), and from that account, husband wrote three checks, the first of which exhausted the community property funds in the account, with the exception of $213. The second check, in the amount of $32,950, was paid as earnest money for obtaining a home construction loan, and the third check was for payment of $9,258 for school fees which were required in order to obtain a building permit for construction of husband and Lucy Cochran's (wife) home. Husband claims he is entitled to reimbursement for the payments of $32,950 and $9,258.

Husband also complains that the trial court erred in not considering his written objections and proposed corrections to the trial court's statement of decision.

We reverse the trial court's determination that husband was not entitled to reimbursement for any of the $32,950 in earnest money or for husband's payment of $9,258 in school fees, but reject husband's other contentions and affirm the judgment in all other respects.

### 2. *Facts and Procedural Background*

Prior to husband and wife's marriage on July 5, 1981, husband bought 5.4 acres of land in Hesperia.

In 1985, husband purchased for $70,000 a wind turbine generator (WTG) as a tax shelter.

On April 27, 1987, husband liquidated his money purchase plan/profit sharing plan (profit sharing plan) totaling $77,395.14. The profit sharing

---

[1] All statutory references in this opinion are to the Family Code except as otherwise indicated.

plan funds were acquired before and during the marriage. After liquidating the profit sharing plan account, husband opened an account at Chino Bank and deposited the money in the account. This was the only money deposited in the account until after husband wrote three checks. The first check, issued on June 30, 1987, for $34,192.15, was to pay off the remaining amount owed on a $45,000 promissory note for the purchase of the WTG. The second check for $32,950, issued on August 6, 1987, was for payment of earnest money for a $250,000 home construction loan, and was deposited with the Chino Bank's construction loan department in a non-interest-bearing account. The third check for $9,258, issued on September 17, 1987, was for a $9,258 school fee, in which payment was required in order to obtain a building permit for construction of husband and wife's family home. Husband and wife's family home was built on the 5.4-acre parcel of land husband purchased before his marriage.

On March 13, 1996, wife petitioned for dissolution of marriage. Husband and wife separated on May 16, 1995. On February 13, 1998, the trial court determined the value of the 5.4-acre parcel apart from the value of the family home. The court entered an order, pursuant to husband and wife's stipulation, finding that the 5.4-acre parcel was valued at $251,500, with husband's separate interest in the land valued at $155,000 and the community property interest valued at $96,500. The trial court reserved for future determination the fair market value of the family home and determination of whether husband was entitled to reimbursement for separate property contributions.

On December 28, 1998, husband and wife stipulated that the family home, located on the 5.4-acre land parcel, had a fair market value of $620,000 (this included the $251,500 value for the land); and "[d]uring the marriage payment was made for school fees at time of construction on the property of $9,280.00 out of the Respondent's separate property."[2]

On April 22, 1999, the trial court signed another order, pursuant to husband and wife's stipulation to the facts agreed to in the February 13, 1998, and December 28, 1998, stipulations, and to the following additional facts: "The Respondent had a Money Purchase Plan/Profit Sharing Plan as of the date of marriage. The fund was withdrawn April 27, 1987, in the total amount of $77,395.14. Of that sum it is stipulated that $43,061.24 was the separate property of Respondent and $34,405.51 was community property. Said sums were deposited in their entirety in Chino Valley Bank Account No. 232-343281 on May 1, 1987. From said sums the following three checks were written: [¶] a. June 30, 1987, $34,192.15 paid off the balance of the $45,000.00 note to Wind Turbine Generator Partnership, . . . . [¶] b. August 6, 1987, $32,950.00 paid as earnest money towards home construction

---

[2]The correct amount of the school fees paid by husband was $9,258, not $9,280.

loan on Gilbert residence. [¶] c. September 17, 1987, $9258.00 paid for school fees necessary for obtaining building permit of family residence."

The remainder of the disputed dissolution issues were tried. The trial court issued a tentative decision and a statement of decision, whereby the trial court determined, among other things, that husband was not entitled to reimbursement for his $32,950 payment for earnest money or for the $9,258 payment for school fees. Husband filed written objections and proposed corrections to the separate statement, which the trial court rejected as untimely. The trial court adopted its tentative decision and final statement of decision as the judgment on August 27, 1999, and husband timely appealed.

### 3. *Tracing Husband's Separate Property to Home Improvements*

 Husband argues that he provided sufficient evidence tracing his separate property from his profit sharing plan to payments for the home loan earnest money and school fees, and therefore the trial court erred in rejecting his claim for reimbursement for these separate property contributions.

### A. *Burden of Proof*

 On appeal, the appellant, husband, bears the burden of establishing error. (*Barrie v. California Coastal Com.* (1987) 196 Cal.App.3d 8, 16 [241 Cal.Rptr. 477].) "All issues of credibility are for the trier of fact, and all conflicts in the evidence must be resolved in support of the judgment. [Citation.] The trial court's judgment is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. [Citation.]" (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 670 [33 Cal.Rptr.2d 13].)

### B. *Reimbursement Under Section 2640*

 Husband and wife stipulated to the division of separate and community property interests in the residence and underlying land. The issue here is thus whether husband is entitled to reimbursement for his separate property contributions to building the family residence.[3]

 Under section 2640, a spouse has a right to receive reimbursement at the time of dissolution for any separate property payments for improvements

---

[3]We reject wife's contention that it was unclear as to whether husband's separate property was used for his separate property portion of the real property or the community property portion. This argument lacks merit because it was undisputed that the earnest money and school fees were paid in connection with the construction of the family home, which was a community property asset.

to community property, unless there has been a written waiver. (*In re Marriage of Walrath* (1998) 17 Cal.4th 907, 919 [72 Cal.Rptr.2d 856, 952 P.2d 1124]; *In re Marriage of Anderson* (1984) 154 Cal.App.3d 572, 577 [201 Cal.Rptr. 498].) Section 2640, subdivision (b) provides that, "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement . . . , the party shall be reimbursed for the party's contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source."

Though tracing to a separate property source generally cannot defeat title presumptions, such as under section 2581,[4] it will establish a prima facie statutory right of reimbursement in a marital action dividing the community estate. (§ 2640; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2000) ¶ 8:430, p. 8-105 (rev. # 1, 1999).)

Under *Walrath*, reimbursement under section 2640 is not limited to the specific property to which the separate property was contributed, but extends to "any other community property that is subsequently acquired from the proceeds of the initial property, and to which the separate property contribution can be traced." (*In re Marriage of Walrath, supra,* 17 Cal.4th at p. 918.)

Section 2640 allows for reimbursement of payments for home improvements and payments that reduce the principal of a loan used to finance home improvements, but appreciation is not recoverable. (§ 2640, subd. (a); *In re Marriage of Walrath, supra,* 17 Cal.4th at p. 924.) The amount of reimbursement recoverable is the value of the separate property contributions at the time they were made. (§ 2640, subd. (b); *Walrath, supra,* at p. 924.) Section 2640 expressly excludes reimbursement for separate property payments for loan interest, and payments for property maintenance, insurance, or taxes.

■ Commingling of separate and community property does not alter the status of the separate property interest so long as it can be traced to its separate property source. (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 822-823 [53 Cal.Rptr.2d 179].) Whether the spouse claiming a separate

---

[4]Section 2581 provides: "For the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶] (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property."

property interest has adequately met his or her burden of tracing to a separate property source is a question of fact and the trial court's holding on the matter must be upheld if supported by substantial evidence. (*Id.* at p. 823; *In re Marriage of Higinbotham* (1988) 203 Cal.App.3d 322, 328 [249 Cal.Rptr. 798].)

### C. *WTG Payment*

■ Husband argues that it must be assumed, as the trial court did, that the community property funds in the Chino Bank account were used to pay off the WTG debt. This assumption is based on the fact that the WTG debt was a community property debt and community property funds were used for community debt first.

■ Under the family expense presumption, "in the absence of other evidence, living expenses are presumed to have been paid out of community property rather than separate property . . . ." (*Beam v. Bank of America* (1971) 6 Cal.3d 12, 22 [98 Cal.Rptr. 137, 490 P.2d 257]; *In re Marriage of Frick* (1986) 181 Cal.App.3d 997, 1018, fn. 11 [226 Cal.Rptr. 766].)

■ As the trial court concluded, under the family expense presumption, it is presumed that the Chino Bank community property funds, rather than husband's separate property share of the funds, were used to pay off the WTG debt since the WTG debt was a community property debt and it was the first expenditure made from the Chino Bank funds.

After paying of the WTG debt ($34,192.15), there was only $213 in community property funds left in the Chino Bank account. Therefore, husband argues the remainder of the payments made from the account were made from his separate property funds, with the exception of the remaining $213.

### D. *$32,950 Construction Loan Earnest Money Payment*

The trial court concluded in its statement of decision that it was not clear that the earnest money payment of $32,950 was made entirely from separate property funds. The court further noted that since the $32,950 payment did not go directly to the builder but, rather, was commingled with the construction loan proceeds, it was uncertain as to what the funds ultimately were used for and, therefore, husband was not entitled to reimbursement for this sum.

It can be presumed under the family expense presumption that the remaining $213 in community property funds was used first to pay for the subsequent home construction loan earnest money since the loan was for building

the family home, a community asset. Then, by process of elimination (there being no community property funds left in the bank account), we conclude that husband's remaining separate property funds were used for the remainder of the $32,950 payment.

While ordinarily, in order to receive reimbursement, husband would be required to provide detailed records showing that separate property was used (*See v. See* (1966) 64 Cal.2d 778, 784 [51 Cal.Rptr. 888, 415 P.2d 776]; *In re Marriage of Frick, supra,* 181 Cal.App.3d at p. 1011), in the instant case this was not necessary. The evidence sufficiently established the portion of separate and community property deposited in the account, and once the community property funds were exhausted, it could be presumed that the subsequent payments were separate property expenditures under section 2640.

Having traced to separate property the funds used for the $32,950 and $9,258 payments, we next address whether husband was entitled to reimbursement.

The $32,950 check was for earnest money, or consideration, for the $250,000 home construction loan used to build a family home. A letter, dated August 5, 1987, from Chino Bank to husband summarized the terms of the loan agreement and explained that $10,000 of the $32,950 in earnest money sum would be allocated to "interest reserve," in the event interest payments on the construction loan were not timely made. The remaining sum was to be allocated to "funds for improvements." The letter further explained that the $32,950 sum, referred to as "customer funds," would be deposited with Chino Bank's construction loan department and placed in a non-interest-bearing account.

Husband states in his proposed statement of decision that $29,350 of the $32,950 sum was used to construct the home. He further states in his appellant's opening brief that his "Proposed Statement of Decision indicates that all of the payments were made on time and hence the 'interest reserve' was never tapped and was used instead in conjunction with the progress payments to construct the home and that the total was insufficient to pay the construction costs and hence the balance was rolled over into the mortgage note when the home was completed." But, of course, husband's proposed separate statement of decision and his appellant's opening brief do not constitute evidence.

Under section 2640, if the $10,000 interest reserve funds were used for interest, the funds would not be reimbursable. Even if the $10,000 interest

reserve funds were not used for interest, we conclude the sum is not reimbursable because husband failed to meet his burden of establishing this and did not establish what happened to the unused funds, if any.

As to the $22,950 balance of the $32,950 in customer funds, we conclude a reasonable inference can be made that the entire sum was spent in reimbursable home construction expenses. Under the building loan agreement, none of that sum could be used for interest. Pursuant to paragraph three of the August 5, 1987, letter, if the $10,000 interest reserve sum was exhausted, additional interest payments were to be paid out of pocket and, thus, not from the remaining $22,950 in customer funds.

In addition, the second introductory paragraph of the building loan agreement states that the customer funds "shall be disbursed in accordance with the terms of this Agreement prior to disbursement of the proceeds of the loan." Paragraph four of the building loan agreement sets forth the terms of disbursement of the loan proceeds and customer funds. First to be paid are all loan closing costs. The August 5, 1987, letter states that the loan fee and closing costs are to be paid from the $250,000 in loan funds, and not from the customer funds. The agreement then states that $269,350 is to be paid for progress payments for "the construction of the improvements." The $269,350 sum apparently consists of $246,400 in loan proceeds designated in the August 5, 1987, letter as allocated for "funds for improvements" and $22,950 in customer funds also designated for "funds for improvements."

Since, according to the building loan agreement, the $22,950 sum was to be spent for construction expenses, before any of the loan proceeds designated for construction improvements were spent, and the home was completed, a reasonable inference can be made that the entire $22,950 amount was used for home construction expenses. We thus conclude husband is entitled to reimbursement for that sum.

E. *The $9,258 School Fees Payment*

 Husband claims the school fees payment is reimbursable under section 2640 as a home improvement because payment of the school fees was requisite to obtaining a building permit. Wife stipulated that the school fees were paid from husband's separate property.

The trial court concluded as follows in its statement of decision that the school fees were nonreimbursable: "School fees are fees paid in mitigation of the impact that the home will have upon the public schools. While payment of the school fees is a precondition attached to the construction

permit, it is not a payment for an improvement to the property per se. It is a cost extracted by the government as a precondition to being permitted to build. On the other hand it is not considered a special tax in the law either." The trial court recognized that the issue was one of first impression and that the existing case law was of little assistance. The court based its conclusion that school fees were nonreimbursable on the general presumption that property acquired during the marriage is community property (§ 2581).

Subdivision (a) of section 2640, specifies certain items that are reimbursable and nonreimbursable. Reimbursable " '[c]ontributions to the acquisition of the property,' as used in this section, include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property . . . ." (§ 2640, subd. (a).) Nonreimbursable items, which are not considered contributions to the acquisition of property under section 2640, include "payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property." (§ 2640, subd. (a).) These items enumerated in section 2640 are not all-inclusive.

In *Anderson* the court stated that "[t]he term 'includes' is 'ordinarily a word of enlargement and not of limitation. [Citation.] The statutory definition of a thing as "including" certain things does not necessarily place thereon a meaning limited to the inclusions.' [Citations.] We are therefore not limited to the forms of contributions enumerated in [section 2640]." (*In re Marriage of Anderson, supra*, 154 Cal.App.3d at pp. 580-581.)

Section 2640 was enacted in 1983 to reverse the holding in *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 816 [166 Cal.Rptr. 853, 614 P.2d 285], in which our high court held that a separate property contribution during marriage to the purchase or improvement of a family home was a gift and, absent an agreement, there was no right to reimbursement at the time of divorce. (*In re Marriage of Fabian* (1986) 41 Cal.3d 440, 446-447 [224 Cal.Rptr. 333, 715 P.2d 253]; *Lucas, supra*, at p. 816; *See v. See, supra*, 64 Cal.2d at p. 785; *In re Marriage of Walrath, supra*, 17 Cal.4th at pp. 914-915, 918; *In re Marriage of Koester* (1999) 73 Cal.App.4th 1032, 1034 [87 Cal.Rptr.2d 76].) " 'AB 26 would avoid the inequity that may result in a case where property taken in joint tenancy form is divided equally between the spouses despite a showing that one spouse contributed a substantial portion of separate funds to the acquisition.' (Assem. Com. on Judiciary, analysis of Assem. Bill No. 26 (1983-1984 Reg. Sess.) as amended Apr. 4, 1983, p. 4.)" (*Walrath, supra*, at p. 915.) Our high court in *Walrath*, citing *In re Marriage of Fabian, supra*, 41 Cal.3d at pages 449-450, noted that "Legislative history of former Civil Code section 4800.2 [now section 2640]

reveals a 'legislative judgment that it would be fairer to the contributing party to allow separate property reimbursement upon dissolution.'" (*Walrath, supra,* at p. 918.)

The only nonreimbursable items specified in section 2640 are payments for loan interest and for property maintenance, insurance, and taxation. (§ 2640, subd. (a).) As the trial court explained, the school fee is not a property tax. (*Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 331, 334 [4 Cal.Rptr.2d 897].) Rather, it is required in order to obtain a building permit to build a home. In *Garrick, supra,* at pages 334-335, the court concluded that there was a clear and close connection between the fees imposed for school facilities and new residential construction.

Since the Legislature's intent was to allow separate property reimbursement for home improvements, and payment of the school fee, which is not a tax, was mandatory in order to obtain a building permit, we conclude that the fee was reimbursable as a home improvement expense. It was paid in furtherance of building husband and wife's home and it would be inequitable and contrary to the purpose of section 2640 to deprive husband of the right to its reimbursement.

### 4. *Objections to the Statement of Decision*

■ Husband complains that the trial court erred in not considering his written objections and proposed corrections to the statement of decision.

The statement of decision was issued on August 24, 1999, and ordered the final judgment on August 27, 1999. On September 7, 1999, and September 16, 1999, husband filed objections and proposed corrections to the statement of decision. Husband argues in his statement of objections and proposed corrections that there was insufficient evidence for the trial court to find that none of the $32,950 sum was used for home improvements. The trial court vacated the filing of husband's statement of objections and proposed corrections as untimely.

Regardless of whether there was any error in the trial court not considering the statement of objections and proposed corrections, such error, if any, was harmless since this court has concluded, consistent with husband's statement of objections and proposed corrections, that he is entitled to recover $22,950 of the $32,950 sum paid from husband's separate funds. With regard to the $10,000 balance designated as interest reserve funds, as we explain above in the preceding section of this opinion, husband is not entitled to reimbursement for this sum because he failed to meet his burden of establishing that the $10,000 sum was used for home improvements.

Accordingly, if there was any error in the trial court not considering husband's written objections and proposed corrections, such error does not constitute reversible error.

## 5. *Disposition*

The judgment is reversed as to the trial court's ruling that husband was not entitled to reimbursement for $22,950 in earnest money and $9,258 for the school fees. The judgment is remanded with instructions to revise the judgment to allow husband to receive reimbursement for payment from his separate property of $22,950 for construction expenses and $9,258 for school fees. In all other respects the judgment is affirmed.

Husband is awarded his costs on appeal.

Hollenhorst, Acting P. J., and Richli, J., concurred.

On March 27, 2001, the opinion was modified to read as printed above.