[Nos. A094731, A096862, A097023. First Dist., Div. One. Dec. 12, 2002.]

In re the Marriage of SCOTT R. NICHOLSON and ELIZABETH SPARKS.
SCOTT R. NICHOLSON, Appellant, v.
ELIZABETH SPARKS, Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

## COUNSEL

Robert L. Walker for Appellant Scott R. Nicholson.

Garrett C. Dailey for Appellant Elizabeth Sparks.

## OPINION

**STEIN, J.—** This is an appeal and cross-appeal from a final judgment dividing the community property and ordering Scott R. Nicholson to make an equalizing payment to his former wife, Elizabeth Sparks.[1]

In his appeal, Nicholson contends that that there is no substantial evidence to support the court's finding that the value of the residence it awarded to

---

[1]Nicholson originally filed a notice of appeal (case No. A094731) and Sparks filed a cross-appeal from a partial judgment on bifurcated issues, entered on February 27, 2001. The appeal in case No. A096862 and cross-appeal case No. A097023 are from a "Second Partial Judgment on Reserved Issues" filed on September 13, 2001. None of these were final judgments, because although each partial judgment resolved some of the issues relating to the division of property, other issues concerning the same subject matter were still pending. (See, e.g.,. Fam. Code, §§ 2025, 4800; Cal. Rules of Court, rule 1269.5; *In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 403-404 [124 Cal.Rptr.2d 719]; *In re Marriage of Griffin* (1993) 15 Cal.App.4th 685, 689 [19 Cal.Rptr.2d 94]; *In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728, 736-737 [137 Cal.Rptr. 568].)

Both parties urged the court to accept jurisdiction, arguing that the practice of the Alameda County court to divide the hearing on property division into parts, and render a series of "partial judgments" should result in entry of a series of separate appealable judgments. The scope of this court's jurisdiction is defined by statute (*In re Marriage of Griffin, supra,* 15 Cal.App.4th 685, 687), and cannot be expanded by the local calendaring practices of a particular county, or the agreement of the parties that they desire immediate review. Other established avenues exist for obtaining review of such interlocutory orders, including the procedures set forth in Family Code section 2025, and Rules of Court, rule 1269.5, or, if an

him, 120 Fairlawn, in the City of Berkeley (hereafter Fairlawn), and the one awarded to Sparks, 416 Gravatt Drive (hereafter Gravatt), in the City of Oakland, were equal.

In her cross-appeal, Sparks contends that the court erred in finding that Nicholson should be credited, pursuant to Family Code[2] section 2640, subdivision (b), in the amount of $30,000 for separate property he used to pay down their community credit card debt which permitted them to qualify for a loan to purchase the Gravatt residence.

We shall hold that the valuation of Gravatt and Fairlawn is supported by substantial evidence, but that section 2640, subdivision (b) does not provide for reimbursement of the separate property Nicholson used to pay community credit card debt. We therefore shall remand to the trial court for recalculation of the equalizing payment it ordered Nicholson to pay.

I.

*Property Valuation**

. . . . . . . . . . . . . . . . . . . . . . . . .

II.

*Reimbursement for Separate Property Used to Pay Down Community Credit Account*

The court also ordered that Nicholson "shall be entitled to a $30,000 credit pursuant to Family Code § 2640 (b) for his traceable separate property contributions to the acquisition of the Gravatt Drive real property." In its statement of decision the court found that, during the marriage, Nicholson's mother periodically transferred money to him. Nicholson claimed these funds were loans which had to be repaid by the community, whereas Sparks asserted they were gifts. With respect to most of the transfers of funds, the court found that Nicholson failed to offer any credible evidence of the

---

appeal from a final judgment would be an inadequate remedy, the parties may petition for review by writ.

The jurisdictional problem, however, was resolved when the trial court entered judgment resolving the last remaining issue relating to property division pending between the parties. The parties have stipulated that all their pending appeals be consolidated and be deemed fully briefed, and that no additional issues be raised with respect to the judgment resolving the last remaining issue of division of personal property. We therefore deem the premature notice of appeal from the partial judgment to be an appeal from the final judgment.

[2]All subsequent statutory references are to the Family Code unless otherwise indicated.

*See footnote, *ante*, page 289.

amounts transferred, or any documentation supporting his contention that they were loans. However, "[i]t was not disputed that [Nicholson's] mother transferred approximately $30,000 to [Nicholson] which was used to pay down . . . the credit card obligations to permit them to qualify for a loan to purchase the Gravatt residence. [Nicholson] claimed that this was a loan that had to be repaid. There was no writing associated with this 'loan.' Although it cannot be treated as an enforceable loan, the Court finds that it is equitable for Scott to be credited this amount as a Family Code § 2640 (b) contribution to the purchase of the Gravatt Drive residence, and he shall receive a credit in that amount in the property division."[8]

Sparks, in her cross-appeal, contends that the court erred in determining that Nicholson be reimbursed pursuant section 2640, subdivision (b) for the use of his separate property to pay community credit card debts, because the payment of credit card debts is not, under any reasonable construction, a "contribution[] to the acquisition of property" or payment for improvements within the meaning of this section.[9] Nicholson, on the other hand, contends his payment of their debt does qualify as a contribution to the acquisition of Gravatt because, without the paydown of credit card debt, the parties could not have obtained a loan, and therefore could not have acquired the Gravatt property. We shall conclude the payment of community credit card debt is not a contribution to the acquisition of property within the meaning of section 2640, and remand to the trial court to recalculate the amount of the equalizing payment it ordered Nicholson to pay without this credit.

---

[8]Nicholson relied primarily upon the contention that his mother had made a loan that should be repaid, but also argued, as an alternative, that the funds from his mother were his separate property, and that he should be reimbursed pursuant to section 2640.

[9]In her opening brief appellant asserted that there were no disputed issues of fact, and the issue was purely one of law (i.e., does the use of separate property to pay down community debt to qualify for home loan constitute a contribution to acquisition of property within the meaning of section 2640), and acknowledged that the court implicitly found that the $30,000 was a gift to Scott. In her reply, however, she contends that there is no substantial evidence to support the implicit finding that the $30,000 Nicholson received from his mother was his separate property, and also suggests there was insufficient evidence that these funds were used to pay down community debt in order to qualify for the loan. Raising these issues for the first time in the reply unfairly deprives Nicholson of a meaningful opportunity to respond. In any event, there was substantial evidence to support the implicit finding that the funds were a gift to Nicholson. Sparks, in her own testimony by declaration, never disputed that Nicholson's mother transferred $30,000 to him prior to the purchase of the Gravatt house, but maintained that the funds transferred were a gift, not a loan. The court, as the trier of fact, could have inferred that they were a gift to Nicholson, based upon Sparks's testimony that Nicholson periodically received money from his mother, in the form of "payments on credit card bills *for his benefit*." Sparks also acknowledged that the credit card debts were community debts. It was *undisputed* that these funds were used to pay down community debt, and therefore no tracing to a separate property source was required.

Subdivision (a) of section 2640 provides that "[c]ontributions to the acquisition of the property" "include *downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property,* but do not include *payments of interest on the loan, or payments made for maintenance, insurance, or taxation* of the property." (Italics added.)

█ This section represents a specific legislative rejection of the general presumption that separate property used for community purposes is a gift, as it was applied in *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 816 [166 Cal.Rptr. 853, 614 P.2d 285]. In *Lucas*, the wife's separate trust fund was used to make a down payment, and to pay for improvements to a house the couple purchased together, and took title to, as joint tenants. The "court held that a separate property contribution during marriage to the purchase or improvement of a family home was [presumptively] a gift and, absent an agreement [to the contrary], there was no right to reimbursement at the time of divorce. (*In re Marriage of Fabian* (1986) 41 Cal.3d 440, 446-447 [224 Cal.Rptr. 333, 715 P.2d 253]; *Lucas, supra,* at p. 816; *See v. See* [(1966)] 64 Cal.2d [778,] 785 [51 Cal.Rptr. 888, 415 P.2d 776]; *In re Marriage of Walrath* [(1998)] 17 Cal.4th [907,] 914-915, 918 [72 Cal.Rptr.2d 856, 952 P.2d 1124]; *In re Marriage of Koester* (1999) 73 Cal.App.4th 1032, 1034 [87 Cal.Rptr.2d 76].)" (*In re Marriage of Cochran* (2001) 87 Cal.App.4th 1050, 1061 [104 Cal.Rptr.2d 920].) The legislative history " 'of former Civil Code section 4800.2 [now Fam. Code, § 2640] reveals a "legislative judgment that it would be fairer to the contributing party to allow separate property reimbursement upon dissolution." ' " (*In re Marriage of Cochran, supra,* 87 Cal.App.4th 1050, 1061-1062, citing *In re Marriage of Walrath, supra,* 17 Cal.4th at p. 918.)

█ However, "the no-reimbursement rule of *See v. See* [*supra,* 64 Cal.2d 778, 785] has been voided *only insofar as the separate property contributions are within the category of 'contributions to the acquisition of property'* as defined in Family Code section 2640." (1 Kirkland et al., Cal. Family Law Practice and Procedure (2002) § 23.12, at pp. 23-32.1, italics added.)[10] Thus, absent an agreement, the use of separate property to pay community debts is not reimbursable, except where the payment is made

---

[10]There is no gift presumption when *community* property is used to reduce the principal balance of a mortgage on *separate* property (see *In re Marriage of Moore* (1980) 28 Cal.3d 366, 371-372 [168 Cal.Rptr. 662, 618 P.2d 208]; *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 436-440 [181 Cal.Rptr. 910]), and several courts have criticized the underpinnings of the gift presumption and discarded it when community property is used to *improve* separate property. (See *In re Marriage of Allen* (2002) 96 Cal.App.4th 497, 498, 501 [116 Cal.Rptr.2d 887]; *In re Marriage of Wolfe* (2001) 91 Cal.App.4th 962, 967 [110 Cal.Rptr.2d 921].) We have found no case, however, that rejects the application of the gift

post separation. (§ 2626.) In this case, the parties had not separated when Nicholson paid their credit card debt with the funds received from his mother. Therefore, absent an agreement that he would be reimbursed, which he did not even attempt to prove, his payment of community credit card debt would not normally be reimbursable. The question, then, is whether the additional fact that the payment of these debts allowed the parties to qualify for a loan to purchase Gravatt characterizes this otherwise nonreimbursable payment as a "contribution to the acquisition of property" within the meaning of section 2640.

Nicholson argues, in reliance upon the decision in *In re Marriage of Cochran, supra,* 87 Cal.App.4th 1050, that if section 2640 does not expressly *exclude* payment of credit card debts from the category of reimbursable "contributions to the acquisition of property," and payment of the credit card debt was necessary in order to qualify for the loan, which in turn facilitated the purchase of Gravatt, then the payment contributed to the acquisition of Gravatt, and should be reimbursable. The decision in *Cochran* is much narrower, however, than Nicholson suggests. In *Cochran,* the husband sought reimbursement for, among other things, school fees that were a condition of obtaining a building permit to build a family residence. The court found that school fees were not a tax, and therefore were not specifically excluded from reimbursement. It further concluded that, because the payment of the fees was required by the local planning agency *as condition of the building permit,* the payment was one of the costs of making the improvement, and therefore reimbursable, as a " 'payment[] for improvements,' " one of the specifically included items in the category of contributions to acquisition of property. (*Id.* at pp. 1061-1062.)

The obligation to pay the school fees in *In re Marriage of Cochran, supra,* 87 Cal.App.4th 1050, was includable in the cost of improving the property because the payment was an express condition of the building permit, and the couple would not have had any obligation to pay the fees if they had not constructed a home. By contrast, here, the obligation to pay the consumer credit card debts preexisted the acquisition of Gravatt, and the parties were obligated to pay these debts whether or not they acquired Gravatt. It was necessary to pay the credit card debts down prior to purchasing Gravatt only because the parties had accumulated too much debt in relation to their income to qualify to take on more debt. Although the payment of the credit card debts facilitated qualification for a loan, the payments did not "contribute to acquisition of the property." Rather, the payment simply reduced preexisting consumer debt unrelated to acquisition of the property.

presumption to the payment of community debts with separate property during marriage, and prior to separation.

Although the forms of reimbursable contributions listed in subdivision (a) of section 2640 are not exclusive, it does not follow that *any* type of expenditure which simply facilitates property acquisition is reimbursable under subdivision (b) of section 2640. A comparison of the list of items included in, and excluded from, the category of "[c]ontributions to the acquisition of the property" provides us interpretative guidance by defining the parameters of reimbursable separate property contributions. The common thread linking the *included* items, i.e., down payments, payments for improvements, and payments to reduce the principal of a loan used to purchase the property or make improvements to it, is that these types of payments either directly contribute to equity acquisition, or are expenses or costs of making improvements which may increase equity, assuming that the improvement actually results in an increase in property value. By contrast, payments of "interest on the loan, or payments made for maintenance, insurance, or taxation," which are *specifically excluded*, do not contribute to equity acquisition, despite the fact that they are expenses necessary to retain ownership or preserve and protect the owner's interest. Thus, not all expenses associated with acquisition or ownership of property are reimbursable, and the types of separate property payments that are reimbursable under this section are those which contribute to the acquisition of equity in the property either directly, or indirectly by paying the cost of improvements.

Applying these parameters to the payments for which Nicholson seeks reimbursement we conclude that Nicholson's use of separate property to pay down community credit card debts does not qualify as a "[c]ontribution[] to the acquisition of" Gravatt. His separate property funds were not used to acquire or increase the equity in Gravatt. Instead, the funds were used to pay consumer credit card debts *before* the parties acquired Gravatt. The debts paid bore *no relationship at all to the Gravatt property,* and the obligation to pay them existed regardless of whether they acquired the Gravatt property. Paying down the debts before purchasing Gravatt reduced their consumer-debt-to-income ratio, and allowed the parties to qualify for a loan, but made no contribution to the amount of equity they acquired. Nicholson did not even attempt to establish that the credit card debts he paid were for expenses relating to any improvement of the Gravatt property.[11] In short, his separate property funds were not used to *acquire Gravatt*, but rather to pay off community debts that *preexisted* the acquisition of Gravatt.

---

[11]Nicholson also testified that the credit card debts were for costs of improvements made to *Fairlawn.* If he had been able to prove this claim to the satisfaction of the court, then the payments clearly would have been reimbursable pursuant to section 2640. In light of his inconsistent testimony, and failure to produce documents to support his claim, we assume that the court must have concluded he failed to prove this alternative ground for reimbursement, or it would not have adopted the far more problematic legal theory that the payments were a contribution to the acquisition of *Gravatt.* After initially testifying that all the funds from his

We conclude that the payment of community debts prior to the acquisition of property, and unrelated to any improvement of the property does not, under any reasonable construction, convert the preseparation payment of community debts into a reimbursable contribution of separate property to the acquisition or improvement of community property pursuant to section 2640. If the Legislature intended such a result it would have had to enact a much broader statute providing for reimbursement of separate property used to pay community debts. It did not do so. Instead, in enacting section 2640 it limited reimbursement to the use of separate property for "acquisition" or "improvement" of community property.

Our conclusion that Nicholson was not entitled to a credit pursuant to section 2640 for the $30,000 of his separate property used to pay down the community debts, prior to the purchase of Gravatt, will require recalculation of the equalizing payment the court ordered Nicholson to pay in its second partial judgment on reserved issues, filed on September 13, 2001, and we shall remand the matter for that purpose.

## CONCLUSION

The order crediting Nicholson with $30,000 pursuant to Family Code section 2640 is vacated, and the matter is remanded for the purpose of recalculating the equalizing payment, without this credit. In all other respects, the judgment is affirmed. Costs are awarded to Sparks.

Marchiano, P. J., and Margulies, J., concurred.

---

mother were used to pay credit card debts incurred for improvements to Fairlawn, Nicholson later acknowledged that $10,000 of the funds provided by his mother was actually used to pay off a car loan. Sparks also produced a credit card statement for the month preceding the pay down of the account, which Nicholson acknowledged primarily reflected expenses for a Hawaiian vacation, and Nicholson was able to identify only one possible construction related expense on it.